**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan**

BROWARD BULLDOG, INC., *et al.*,

      Plaintiffs,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, *et al.*,

      Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, the United States Department of

Justice and the Federal Bureau of Investigation's Motion for Summary Judgment on Counts II

and III of Plaintiff's Complaint [ECF No. 27], filed December 30, 2016.  The Court has carefully

considered the Motion; Plaintiffs, Broward Bulldog, Inc. and Dan Christensen's Opposition

[ECF No. 29]; Defendants' Reply [ECF No. 32]; additional written submissions;[1] oral

arguments;[2] and applicable law.

## I.  BACKGROUND

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. section 552,

brought by Plaintiffs against the Government.  Plaintiffs request the FBI release records related

to a commission created to investigate the September 11, 2001 terrorist attacks (the "Meese

Commission").  (*See generally* Compl.).

---

[1] The materials include Defendants' Statement of Undisputed Facts ("Defendants' SUF") [ECF No. 26];
and Plaintiffs' Response ("Plaintiffs' SUF Response") [ECF No. 28].

[2] On February 7, 2017, the Court held a hearing on the Motion.  (*See* Minute Entry . . . ("February 7
Hearing") [ECF No. 39]; *see also* Motion Hearing . . . ("Feb. 7 Hearing Trans.") [ECF No. 55]).

### A.      The September 11 Terrorist Attacks and the Al-Hijji Family

Broward Bulldog "reports on news and public affairs in Florida" on its website: www.FloridaBulldog.com.  (Pls.' SUF Resp. ¶ 17).  Christensen "is the founder, operator, and editor of the Broward Bulldog."  (*Id.*).  After the September 11, 2001 terrorist attacks, Broward Bulldog "interviewed Sarasota residents who said Abdulaziz and Anoud Al-Hijji [(the "Al-Hijjis" or "Al-Hijji Family")], a couple that had lived . . . [in] Sarasota, were part of a wealthy Saudi family with connections to the Saudi royal family[,] and . . . abruptly departed Sarasota on August 27, 2001."  (*Id.* ¶ 18 (alterations added)).  Broward Bulldog learned the FBI searched the Al-Hijjis' home, finding "a new car had been abandoned" and "sign-in logs and photographs of license plates" showing the September 11 "ringleader Mohamed Atta and other hijackers had visited the [A]l-Hijji[s'] home."  (*Id.* (alterations added)).

On September 8, 2011, Broward Bulldog published an article reporting the FBI's investigation of the Al-Hijjis.  (*See id.* ¶ 19).  The following day, the FBI publicly admitted "it had conducted the investigation" but "asserted it had found no connection between the Saudi family" and the September 11 terrorist attacks.  (*Id.* ¶ 20).  The FBI also claimed it had disclosed its investigation to the United States Congress.  (*See id.*).  Nevertheless, "U.S. Senator D. Robert Graham, who had co-chaired a Congressional Joint Inquiry regarding 9/11, said the FBI should have disclosed [to Congress,] but did not disclose[,] the existence of its Sarasota investigation."  (*Id.* ¶ 19 (alterations added)).  Broward Bulldog suspects the "FBI might be concealing a matter of great public importance."  (*Id.* ¶ 20).

Broward Bulldog requested the FBI and Florida Department of Law Enforcement "produce its [sic] records regarding the Sarasota investigation" of the Al-Hijjis.  (*Id.* ¶ 21 (alteration added)).  On December 21, 2011, the FDLE produced records showing "the FBI had

interviewed a witness in 2004 who linked [Abdulaziz Al-Hijji] to Osama bin Laden, and a senior al Qaeda leader."  (*Id.* (alteration added)).

Also in 2011, Senator Graham asked "the FBI why it had claimed to have disclosed its Sarasota investigation to Congress when in fact it had not."  (*Id.* ¶ 22).  In response, the FBI showed the Senator "some of its Sarasota investigative files" which "seemed to contradict the FBI's public statements that the investigation found nothing, but the FBI refused to explain this inconsistency or . . . show [Senator] Graham its full Sarasota file."  (*Id.* (alterations added)).  Senator Graham "reported to the [Broward] Bulldog something seemed to be terribly amiss." (*Id.* (alteration added)).

### B.    *Broward Bulldog I* — First FOIA Action

In September 2011, Broward Bulldog requested documents from the FBI regarding the Al-Hijji Family investigation.  (*See id.* ¶¶ 23; *see also Broward Bulldog, Inc., et al. v. U.S. Department of Justice, et al.*, 12-CV-61735-WJZ (S.D. Fla. 2012) ("*Broward Bulldog I*"), Complaint [ECF No. 1] ¶ 77–78).  The FBI "refused to produce its Sarasota investigation records," so Broward Bulldog filed a FOIA action against the Department of Justice and the FBI on September 5, 2012.  (Pls.' SUF Resp. ¶ 23).  That case is pending.  (*See generally Broward Bulldog I*).

One of the documents released by the FBI as a result of *Broward Bulldog I* was an April 16, 2002 report ("April 16, 2002 Report") indicating the agency had found "many connections" between the Al-Hijjis and "individuals associated with the terrorist attacks."  (Pls.' SUF Resp. ¶ 25 (internal quotation marks omitted)).  Broward Bulldog, the *Tampa Bay Times*, *Sarasota Herald Tribune*, *Sarasota Magazine*, and other media identified Gregory J. Sheffield as the author of the April 16, 2002 Report.  (*See id.*).

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

In *Broward Bulldog I*, the court denied Defendants' motion for summary judgment and directed the FBI "to conduct a more thorough search for additional Sarasota investigation records, including the use of searches for the names of Abdulaziz and Anoud al-Hijji and Esam Ghazzawi." (*Id.* ¶ 26; *see also Broward Bulldog I* ("Order on MSJ") [ECF No. 58] (denying the Government's motion for summary judgment and granting Plaintiffs' motion to compel additional search); *see id.* Order ("Order to Compel") [ECF No. 60] 13–14 (granting Plaintiffs' motion for an order compelling an additional search; finding the Government's search efforts had not been reasonable; and stating the FBI's documents "seem incomplete" and "seem to contradict one another")).

The Order to Compel required that Defendants conduct searches for responsive documents using a list of automated text searches, which included the terms "Abdulaziz al-Hijji" and "Deborah Ghazzawi." (*See Broward Bulldog I*, Order to Compel 20–21). The court noted:

> [W]ith respect to the names set forth above, these names have already been made a part of the public record by Plaintiffs' filings. Additionally, some of the names are matters of Sarasota County public record as the owners of the property in question. Defendants have never requested the Court redact or seal the names published by Plaintiffs.

(*Id.* 21 (alteration added)).

After Plaintiffs commenced *Broward Bulldog I*, the FBI created the Meese Commission[3] "to evaluate, among other things, the [Broward] Bulldog's reporting." (Pls.' SUF Resp. ¶ 24 (alteration added). On March 25, 2015, the Meese Commission issued its final report (*see* Defs.' SUF ¶ 2), concluding the April 16, 2002 Report — which found many connections between the Al-Hijjis and the September 11 attacks — was "poorly written" and "wholly unsubstantiated." (Pls.' SUF Resp. ¶ 28 (internal quotation marks omitted)).

---

[3] Defendants refer to the commission as the 9/11 Review Commission. (*See generally* Mot.; Reply).

4

### C. *Broward Bulldog II* — Second FOIA Action

This action stems from three requests submitted by Broward Bulldog to the FBI regarding the Meese Commission investigation. (*See id.* ¶¶ 30–34; *see also* Defs.' SUF ¶¶ 1–3). The first request, issued on April 8, 2015, sought "transcripts of Meese Commission proceedings, Memoranda for the Record, personal service contracts, drafts of the final report, FBI briefings and summaries given to the Commission, and the Sarasota family case file reviewed by the Commission" ("First Request" or "Count I"). (Pls.' SUF ¶ 30; *see also* Compl. ¶¶ 41–50). The second request, issued on July 4, 2015, sought "a narrower set of Meese Commission records" ("Second Request" or "Count II"). (Pls.' SUF ¶ 31; *see also* Compl. ¶¶ 51–58). The third request, also sent on July 4, 2015, asked for "documents regarding disciplinary action taken against the agent who prepared the April 16, 2002[] FBI report" ("Third Request" or "Count III"). (Pls.' SUF ¶ 32 (alteration added); *see also* Compl. ¶¶ 59–67).

### D. Motion for Summary Judgment Issues

When the Government filed the summary judgment motion, the FBI had fully processed Plaintiffs' Second and Third Requests, but had not finished processing the First Request.[4] (*See* Mot. 2–3). The FBI requests summary judgment on Counts II and III of the Complaint; these correspond to the Second and Third Requests, respectively. (*See id.* 3). Following the February 7 Hearing, the FBI released previously redacted information related to the Second Request, narrowing the disputed documents in Count II from 611 to 12 partially redacted pages. (*See* Defendants' Notice of Developments Relating to Their Pending Motion for Summary Judgment ("February 9 Notice") [ECF No. 42] 1). Additionally, as to the Third Request, the FBI expanded its search by asking the FBI agent who authored the April 16, 2002 Report if he or she knew of

---

[4] Since then, the FBI has fully processed Plaintiffs' First Request and now seeks an extension of time to file a motion for summary judgment on Count I. (*See* Renewed Motion for Leave to File Motion for Summary Judgment on Count 1 [ECF No. 52]).

"any records regarding any disciplinary action taken against him/her" in connection with the report; the agent responded he or she was not aware of any such records. (*Id.* 4). Defendants conferred with Plaintiffs, and this additional search regarding the Third Request renders the claim for relief in Count III moot. (*See id.*). Thus, only the 12 redacted pages in Count II remain at issue in the Motion.

## II.  LEGAL STANDARDS

### A.      Summary Judgment Standard

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c).  An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At summary judgment, the moving party bears the initial burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (alterations and internal quotation marks omitted)).  If "the moving party fails to demonstrate the absence of a genuine issue of material fact, the motion should be denied." *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (citations omitted).

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

## B.     The FOIA

 "The purpose of FOIA is to encourage public disclosure of information so citizens may understand what their government is doing." *Office of Capital Collateral Counsel, N. Region of Fla.* ex rel. *Mordenti v. U.S. Dep't of Justice*, 331 F.3d 799, 802 (11th Cir. 2003).  "Congress enacted FOIA to 'enable the public to have access to government information that is unnecessarily shielded from public view.'" *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1244 (11th Cir. 2008) (quoting *Nadler v. U.S. Dep't of Justice*, 955 F.2d 1479, 1484 (11th Cir.1992)).  Accordingly, "the records at issue . . . are presumed to be subject to disclosure unless" Defendants "affirmatively establish[] . . . the requested records fall into one of FOIA's exemptions." *Office of Capital Collateral Counsel*, 331 F.3d at 802 (alterations added; citation omitted); *see also Light v. U.S. Dep't of Justice*, 968 F. Supp. 2d 11, 26 (D.D.C. 2013) ("It is clear that 'disclosure, not secrecy, is the dominant objective of the [FOIA].'" (alteration added; citation omitted)).

The Government may invoke nine statutory exemptions to withhold records from public disclosure.  *See* 5 U.S.C. §§ 552(b)(1)–(9); *see also Chilivis v. S.E.C.*, 673 F.2d 1205, 1210–11 (11th Cir. 1982) ("[R]ecords and documents held by federal agencies are presumed subject to disclosure unless the agency can establish that the material falls into one of the FOIA's nine exemptions." (alteration added; citations omitted)).  These exemptions attempt to "balance the public's need for access to information with the Government's need, under some circumstances, for confidentiality." *Chilivis*, 673 F.2d at 1210 (citation omitted).  Because of the FOIA's presumption in favor of public disclosure, these "exemptions are . . . narrowly construed." *F.B.I. v. Abramson*, 456 U.S. 615, 630 (1982) (alteration added; citation omitted).

The FOIA "vests jurisdiction in federal district courts to enjoin an 'agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.'" *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 139 (1980) (quoting 5 U.S.C. § 552(a)(4)(B)).   Courts review an agency's decision to withhold its records *de novo*, and the Government bears the burden of justifying any disputed exemptions.   *See id.*; *see also Miccosukee Tribe of Indians of Fla.*, 516 F.3d at 1258.   In assessing the evidence, courts must determine whether the agency had an "adequate factual basis" for invoking the exemptions.   *Miccosukee Tribe of Indians of Fla.*, 516 F.3d at 1244. "[I]n this Circuit, an adequate factual basis may be established, depending on the circumstances of the case, through affidavits, a *Vaughn* Index,[5] *in camera* review, *or* through a combination of these methods."   *Id.* at 1258 (alteration and footnote call number added; emphasis in original; citation omitted).

FOIA cases are generally resolved on motions for summary judgment.   *Id.*.   "The relevant question on summary judgment, viewed in the light most favorable to the person making the FOIA request, is whether an agency conducted a reasonable and adequate search 'calculated to uncover all relevant documents' and whether any withholdings were justified."   *Guidry v. Comey*, No. 4:15CV23-RH/CAS, 2016 WL 1068611, at *3 (N.D. Fla. Feb. 4, 2016), *report and recommendation adopted*, No. 4:15CV23-RH/CAS, 2016 WL 1069669 (N.D. Fla. Mar. 17, 2016) (citations omitted).

---

[5] A *Vaughn* index lists the documents the agency is withholding along with a detailed justification for the agency's claim.   *See Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

## III. ANALYSIS

### A. Introduction

With regard to Count II, Defendants argue the redacted information is properly exempt from disclosure under six FOIA exemptions. (*See* Mot. 7 (citing 5 U.S.C. §§ 552(b)(1), (b)(3)–(7)). Defendants submitted the 12 disputed pages, unredacted, for *in camera* review,[6] along with a *Vaughn* index (*see* Sealed Exparte Documents . . . ("Exparte Documents") [ECF No. 45-1]); as well as a declaration from David M. Hardy[7] explaining the applicability of the invoked exemptions (*see generally* Hardy Decl.). According to Plaintiffs: (1) genuine issues of material fact exist regarding whether the claimed exemptions are properly invoked (*see* Resp. 1); (2) the FBI does not adequately explain how the redacted information falls within the asserted exemptions (*see id.* 2); and (3) "conflicting evidence . . . in the records cannot be resolved by motion for summary judgment" (*id.* 14 (alterations added)).

The 12 disputed pages encompass four documents: (1) an April 30, 2014 Report (*see* Exhibits to Hardy Declaration ("Hardy Declaration Exhibits"), Ex. K, [ECF No. 27-2] 37–40);[8] (2) an October 24, 2014 Report (*see id.* 41–42); (3) a November 10, 2014 Bassem Youssef Interview Briefing ("Youssef Interview Briefing") (*see id.* 43–44); and (4) an October 5, 2012 Memorandum (*see id.* 45–48).

---

[6] The unredacted information marked as classified was separately submitted to the Clerk of Court. (*See* Order [ECF No. 40]).

[7] Hardy is the Section Chief of the Record-Information Dissemination Section of the FBI's Records Management Division. (*See* Second Declaration of David M. Hardy ("Hardy Declaration") [ECF No. 27-1] ¶ 1).

[8] Some of the information marked as redacted in these documents was later unredacted by the Government after the February 7 Hearing. (*See* February 9 Notice 1).

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

**B.    April 30, 2014 Report**

Defendants invoke FOIA Exemptions 6, 7, and 5 — 5 U.S.C. §§ 552(b)(5)–(6), (b)(7)(C)–(E) — to support the April 30, 2014 Report redactions.  (*See* Hardy Decl. Exs., Ex. K, 37–40).

1.    Exemptions 6 and 7(C)

Exemption 6 allows the Government to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  In *Department of Air Force v. Rose*, 425 U.S. 352 (1976), the Supreme Court held Exemption 6 does not "create[] a blanket exemption for personnel files," *id.* at 371 (alteration added), and "does not protect against disclosure every incidental invasion of privacy[,] [but] only such disclosures as constitute 'clearly unwarranted' invasions of personal privacy," *id.* at 382 (alterations added).  The "primary purpose" of Exemption 6 is to "protect individuals from the *injury and embarrassment* that can result from the *unnecessary* disclosure of personal information." *News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1196 (11th Cir. 2007) (emphasis in original; internal quotation marks omitted) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 599 (1982)).

 In *Rose*, the Supreme Court explained Exemption 6 requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the [FOIA] to open agency action to the light of public scrutiny."  425 U.S. at 372 (alteration added; internal quotation marks omitted).  The Eleventh Circuit has stated "the crux of Exemption 6 is its second prong, which asks whether disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'" *News-Press*, 489 F.3d at 1197 (citations omitted).  The Eleventh Circuit has also described "an agency's burden under Exemption 6" as "onerous." *Id.* at 1198 (alteration

added) (citing *Stern v. F.B.I.*, 737 F.2d 84, 91 (D.C. Cir. 1984) (Exemption 6's language "require[s] a balance tilted emphatically in favor of disclosure" (alteration added)) (other citations omitted).

Exemption 7(C) covers records compiled for law enforcement purposes and similarly allows the Government to withhold information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Exemption 7(C) is less onerous than Exemption 6, *see News-Press*, 489 F.3d at 1198, because the agency need only show disclosure "could reasonably be expected" to constitute an unwarranted invasion of personal privacy, 5 U.S.C. § 552(b)(7)(C); whereas under Exemption 6, the Government must show disclosure "would" constitute an unwarranted invasion of personal privacy, *id.* § 552(b)(6); *see also U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994) ("Exemption 7(C) is more protective of privacy than Exemption 6 . . . . Exemptions 7(C) and 6 differ in the magnitude of the public interest that is required to override the respective privacy interests protected by the exemptions." (alteration added)).

The Government invokes Exemptions 6 and 7(C) to withhold the names of the "third party" whom it had investigated and the FBI agents and "support personnel" who investigated the third party (Mot. 18–19), because disclosure "would constitute an unwarranted invasion of privacy" of these individuals (Reply 4). With regard to the "third party," the FBI explains "public identification of a subject of a criminal investigation carries a negative connotation and stigma, and runs the risk of subjecting the person to harassment, embarrassment and undue public attention." (*Id.*). As to the agent and support personnel, the FBI explains releasing their names would be an unwarranted invasion of privacy because the information "could trigger

hostility toward" them and "there is no public interest" in disclosing the identities.  (Hardy Decl. ¶¶ 59–60).

According to Plaintiffs, the redacted names are already in the public domain — the media has "identified Gregory J. Sheffield as the author of the report" (Resp. 9), and the Al-Hijji and Ghazzawi families as subjects of the FBI's investigation (*see id.* 5–6) — and there is a significant public interest in revealing the names (*see id.* 6–12).  Broward Bulldog wants the public to understand "whether the Meese Commission was briefed by persons other than the FBI agent who themselves were involved in concealment from Congress and the public of evidence that the Saudi government supported the hijackers."  (*Id.* 9).  Plaintiffs assert the objective of Broward Bulldog is:

> [T]o ascertain whether, as the FBI has maintained for more than five years [] it found nothing when it undertook an investigation of the al-Hijjis (in which case there could be no national security, law enforcement or personal privacy interests to justify continued secrecy)[,] or [whether] the FBI has been maintaining an elaborate ruse to prevent Congress and the public from discovering that the Saudi government did provide support for the hijackers.

(*Id.* 10 (alterations added)).  Plaintiffs also question why the FBI "selectively redacted" some of the names in the report and "provided the Court with no basis for distinguishing one from another."  (*Id.* 9).

The Court agrees with Plaintiffs the FBI has not established it properly invokes Exemptions 6 and 7(C) in the April 30, 2014 Report.  Throughout the Report, the Government invokes Exemption 7(C) simultaneously with Exemption 6.  "[C]ourts employ a similar analysis to decide whether a FOIA request may be categorically denied on either ground" even though "the privacy language in Exemption 7(C) is broader than the privacy language in Exemption 6." *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 840 F. Supp. 2d 226, 230–31 (D.D.C. 2012) ("*Citizens for Responsibility & Ethics in Wash. I*") (alteration added).  Thus,

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

the Court analyzes whether both exemptions are properly invoked, taking into account a more onerous standard applies to Exemption 6. *See Office of Capital Collateral Counsel*, 331 F.3d at 803 n.6 (applying the higher standard of Exemption 6 when both Exemptions 7(C) and 6 were utilized to justify a redaction).

When considering whether nondisclosure is proper under Exemptions 6 and 7(C), the Court first determines "if disclosure would constitute an invasion of privacy, and how severe an invasion." *Rural Hous. All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 77 (D.C. Cir. 1974). The Court then weighs the privacy interest against the public interest in the information sought. *See id.*; *see also Citizens for Responsibility & Ethics in Wash. I*, 840 F. Supp. 2d at 231 ("Under both exemptions [6 and 7(C)], the court must first assess whether the third-party has more than a *de minimis* privacy interest in the requested material . . . . If such an interest exists, the court must then determine whether the third-party's privacy interest is outweighed by the public interest in disclosure." (alterations added; internal citations omitted; citations omitted; emphasis in original)).

The Government has not met its burden of showing disclosure of the names would constitute an invasion of privacy. Further, it has not addressed whether the invasion would be severe and whether the public's interest in disclosure outweighs any potential invasion of privacy. (*See generally* Mot.; Hardy Decl.). This is problematic given Plaintiffs' contention a significant public interest exists in learning about the FBI's investigation of the Al-Hijjis and showing the requested information is likely to advance this public interest. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (when Exemption 7(C) is present, a citizen requesting information under the FOIA "must show that the public interest sought to be advanced is a significant one . . . [and] must show the information is likely to advance that

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

interest" (alterations added)).  There are questions of material fact whether disclosing the names would constitute an unwarranted invasion of privacy and whether the public interest in knowing this information is paramount.  Indeed, based on the record, it seems the names should be unredacted because Exemptions 6 and 7(C) are not applicable.

The Court is unpersuaded by the Government's explanations as to why Exemptions 6 and 7(C) justify redaction of the names, especially in light of the FOIA's objective of "disclosure, not secrecy" and the Supreme Court's instruction to construe the exemptions narrowly.  *Rose*, 425 U.S. at 361.  The Government's conclusory statements that disclosing the information could cause harassment (*see* Hardy Decl. ¶¶ 59–60), are insufficient to support withholding the information under these exemptions.  *See Stonehill v. I.R.S.*, 534 F. Supp. 2d 1, 12 (D.D.C. 2008) (noting the "government's bare assertion that a protected privacy interest is involved" was insufficient; otherwise "the FOIA privacy exemptions could effectively swallow the general rule favoring disclosure").

Tellingly, some of the redacted names are already in the public domain, and Plaintiffs know the names of the individuals investigated by the FBI and the agents involved.  (*See generally* Resp.).  "Under [the] FOIA's public domain exception, an agency may not rely on an otherwise valid [FOIA] exemption to justify withholding information that is already in the public domain."  *Marino v. Drug Enforcement Admin.*, 685 F.3d 1076, 1080 (D.C. Cir. 2012) (first alteration added; second alteration in original; internal quotation marks and citations omitted).  Given the rationale for Exemptions 6 and 7(C), once the information is in the public domain, there is no longer a privacy interest justifying nondisclosure.  *See Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 19 (D.C. Cir. 1999) ("But the logic of [the] FOIA compels

the result: if identical information is truly public, then enforcement of an exemption cannot fulfill its purposes." (alteration added)).

Defendants insist even if the information is already in the public domain, they may still withhold the names because this specific report is not public, and thus it "does not lose its protection." (Reply 6). This argument is unconvincing. "One can have no privacy interest in information that is already in the public domain." *Citizens for Responsibility & Ethics in Wash. I*, 840 F. Supp. 2d at 233.

Not only have Plaintiffs shown some of the redacted names are in the public domain, but in *Broward Bulldog I*, the Order to Compel listed names the FBI must use in its search. After listing the names, the Order states the names "have already been made part of the public record," "are matters of . . . public record," and "Defendants have never requested the Court redact or seal the names published by Plaintiffs." (*Broward Bulldog I*, Order to Compel 21 (alteration added)). Despite this, Defendants redact from the April 30, 2014 Report some of the names appearing in the Order.

In short, Defendants have not shown the names are properly redacted under Exemptions 6 and 7(C). Thus, summary judgment is denied as to Defendants' reliance on Exemptions 6 and 7(C) in the April 30, 2014 Report.

        2.    <u>Exemptions 7(D) and 7(E)</u>

The FBI also relies on Exemptions 7(D) and 7(E) to redact portions of the April 30, 2014 Report. (*See* Hardy Decl. Exs., Ex. K, 37–40). Both exemptions apply to records compiled for law enforcement purposes. *See* 5 U.S.C. § 552(b)(7)(D)–(E).

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

a.      *Exemption 7(D)*

Exemption 7(D) permits withholding of information that "could reasonably be expected to disclose the identity of a confidential source." *Id.* § 552(b)(7)(D). It "has long been recognized as the strongest of all of [the] FOIA's law enforcement exemptions." *Bullock v. F.B.I.*, 587 F. Supp. 2d 250, 253 (D.D.C. 2008) (alteration added; citation omitted). "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Williams v. F.B.I.*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (internal quotation marks and citations omitted). The inquiry focuses on whether "the particular *source* spoke with an understanding that the communication would remain confidential." *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993) (emphasis in original).

In *Landano*, the Supreme Court held "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a criminal investigation." *Id.* at 181. Instead, circumstances such as the nature of the crime and the source's relation to the crime must be considered in determining whether the source spoke with the understanding the information would remain confidential. *See id.*

According to the Government, Exemption 7(D) applies in the April 30, 2014 Report to protect names and information provided: (1) "by third parties under implied assurance of confidentiality" (Mot. 21 (citing Hardy Decl. ¶¶ 67–68); *see also* Hardy Decl. Exs., Ex. K, 37–40); and (2) by "a local law enforcement agency that obtained the information from their [sic] own confidential sources" (Mot. 21 (citing Hardy Decl. ¶¶ 69–70); *see also* Hardy Decl. Exs., Ex. K, 37–40).

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

As to the first justification – protecting the names of third parties who spoke to the FBI under an implied assurance of confidentiality – the FBI explains it "inferred" the individuals "provided information . . . only because they believed their cooperation . . . , and the information they provided, would remain confidential."   (Hardy Decl. ¶ 67 (alterations added)).  The FBI further states it inferred the individuals spoke only because they believed their identities would remain undisclosed, as the investigation involved terrorism, a violent crime.  (*See id.* ¶ 67(b)).

The first instance Exemption 7(D) is relied on in the April 30, 2014 Report is at the top of the second page, the first redacted paragraph.  (*See* Hardy Decl. Exs., Ex. K, 38).   The unredacted paragraph provides no identifying information and does not state the names of the individuals who spoke to the FBI or the persons' physical descriptions.  (*See id.*).   Thus, the FBI has failed to meet its burden of showing producing the unredacted paragraph "could reasonably be expected to disclose the identity of a confidential source." 5 U.S.C. § 552(b)(7)(D).

Exemption 7(D) is then invoked in the third redacted paragraph on page two of the April 30, 2014 Report.  (*See* Hardy Decl. Exs., Ex. K, 38).  This paragraph mentions a source's name.  (*See id.*).  Plaintiffs know the individual's name, as evidenced in their Response.  (*See generally* Resp.).  It is no secret this individual spoke to the FBI regarding the Al-Hijjis.  (*See generally id.*).

At the February 7 Hearing, Plaintiffs argued because the information they seek is in the public domain, the Government should not be allowed to withhold it.  (*See* Feb. 7 Hearing Trans. 32:5–9).  Yet, even "when the source's identity is no longer a secret," Exemption 7(D) may still apply.  *Bullock v. F.B.I.*, 577 F. Supp. 2d 75, 80 (D.D.C. 2008) (citation omitted); *see also L & C Marine Transp., Ltd. v. United States*, 740 F.2d 919, 925 (11th Cir. 1984) ("[A] court must not release the information if the witnesses are confidential sources," even if the plaintiffs can

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

discover who the sources are through discovery. (alteration added)).    "No waiver of confidentiality has occurred," under Exemption 7(D); even when the information finds "its way into the public domain . . . that does not alter the fact that this information originally was obtained in confidence." *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 491 (D.C. Cir. 1980) (alteration added).   "The only way to overcome Exemption 7(D) is to show that the 'exact information' contained in the record is already in the public domain." *Bullock*, 587 F. Supp. 2d at 253 (citation omitted).

Plaintiffs have not shown the "exact information" redacted from this paragraph is already in the public domain.  (*See generally* Resp.).   Because the FBI asserts the source spoke with an implied assurance of confidentiality, given the information concerned violent criminal activities that could place the source "in harm's way should the[] [individual's] identit[y] . . . become known" (Hardy Decl. ¶¶ 67(b)–68 (alterations added)), the Government properly withholds this information under Exemption 7(D).

The next redaction justified under Exemption 7(D) appears on the top of the third page of the April 30, 2014 Report.  (*See* Hardy Decl. Exs., Ex. K, 39).  After the redaction appear the following words: "of the gated community, was mentioned in the article stating he had a gut feeling . . . ."  (*Id.* (alteration added)).  The redacted language does not state the FBI interviewed this individual, and Hardy does not explain how the individual was an FBI source.  (*See id.*; *see generally* Hardy Decl.).  Whereas the other redacted portions under Exemption 7(D) state the FBI interviewed the source, there is no such description of this individual communicating with the FBI.  (*See* Hardy Decl. Exs., Ex. K, 39).  It also appears the individual's name is already in the public domain because he is "mentioned in the [Broward Bulldog] article."  (*Id.* (alteration added)).

Nevertheless, Hardy states any redaction under category (b)(7)(D)-1[9] protects the names of parties who provided the FBI confidential information.   (*See* Hardy Decl. ¶ 67). Consequently, because this redaction protects identifying information about a confidential source, Exemption 7(D) applies.  *See Lesar*, 636 F.2d at 492 (Under Exemption 7(D), if the Government establishes through affidavits that "the information at issue was furnished by a 'confidential source' during the course of a legitimate criminal law investigation," "all such information obtained from the confidential source receives protection." (footnote call numbers omitted)).

The last invocation of Exemption 7(D) in the April 30, 2014 Report appears on page three — it is the third-to-last redaction on the page.  (*See* Hardy Decl. Exs., Ex. K, 39).  The Government explains the information was "provided to the FBI by a local law enforcement agency that obtained the information from their [sic] own confidential sources."  (Hardy Decl. ¶ 69).  Under Exemption 7(D), a confidential source may be a "State, local, or foreign agency or authority."  5 U.S.C. § 552(b)(7)(D).

The Government asserts it properly withholds the information because it is "reasonable to infer" the local law enforcement agency shared information with the FBI with the understanding it would be kept confidential given the "potential significant harms should [the local authority's confidential source's] association . . . with local law enforcement — and by extension, the FBI — be publicly disclosed."  (Hardy Decl. ¶¶ 69–70).  Yet, the redacted text does not contain any identifying information about the local authority's confidential source.  (*See* Hardy Decl. Exs., Ex. K, 39).  It only mentions the name of the local agency and its findings. (*See id.*).  The FBI does not explain how this information merits redaction under Exemption

---

[9] This is an FBI subcategory identified in the margins of the documents and the Hardy Declaration (*see generally* Hardy Decl.; Hardy Decl. Exs., Ex K); separate from the FOIA categories.

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

7(D).  (*See* Hardy Decl. ¶¶ 69–70).  The Government only states it can reasonably be inferred the local agency gave the information to the FBI under a presumption of confidentiality.  Such boilerplate language "amounts to little more than recitation of the statutory standard, which . . . is insufficient."  *Billington v. U.S. Dep't of Justice*, 233 F.3d 581, 584 (D.C. Cir. 2000) (alteration added; citation omitted).

As the Court held in *Landano*, "the Government is not entitled to a presumption that a source is confidential within the meaning of Exemption 7(D) whenever the source provides information to the FBI in the course of a[n] . . . investigation."  508 U.S. at 181 (alterations added).  Because the Government asks the Court to presume the local agency assumed the information would remain confidential solely because the local agency provided it to the FBI, the Government has not met its burden at summary judgment.  Defendants fail to provide any details as to how the confidentiality presumption applies to this specific scenario.

To be clear, a local authority may be a confidential source, *see* 5 U.S.C. § 552(b)(7)(D), but the FBI posits the confidential source here is the confidential source of the local authority, and therefore the local authority is a confidential source (*see* Hardy Decl. ¶¶ 69–70).  The FBI fails to explain there is any identifying information about the local authority's confidential source in the redacted material and does not properly explain how the local authority itself is a confidential source.  (*See id.*).

### b.    Exemption 7(E)

Exemption 7(E) applies to information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E) (alteration added).  "A highly specific burden of showing how the law will be circumvented is not required; instead,

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

exemption 7(E) only requires that the agency demonstrate logically how the release of the requested information might create a risk of circumvention of the law." *Touarsi v. U.S. Dep't of Justice*, 78 F. Supp. 3d 332, 348 (D.D.C. 2015) (alterations, internal quotation marks, and citations omitted).   "While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well-known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness."   *Am. Immigration Lawyers Ass'n v. U.S. Dep't of Homeland Sec.*, 852 F. Supp. 2d 66, 78 (D.D.C. 2012) (citations omitted).

The FBI invokes Exemption 7(E) seven times in the April 30, 2014 Report (*see* Hardy Decl. Exs., Ex. K, 38–39), "to protect information containing sensitive investigatory techniques and procedures authorized for use by the FBI" (Hardy Decl. ¶ 75).   The information concerns "procedures used by the FBI to conduct international terrorism investigations" which contain "sensitive information about investigative methods" (*id.* ¶ 76); dates and types of investigations (*see id.* ¶ 77); and methods the FBI uses to collect and analyze information (*see id.* ¶ 78). Plaintiffs do not address this exemption in the context of the April 30, 2014 Report (*see* Resp. 6–12), but reference it in other parts of their Response where they conclusorily assert release of the information years after the September 11, 2001 attacks could not reasonably be expected to cause circumvention of the law (*see id.* 14–15).   To this, the FBI explains the techniques and procedures are not specific to this case but apply generally to international terrorism investigations.  (*See* Hardy Decl. ¶ 76).

After reviewing the April 30, 2014 Report, the *Vaughn* index, and the Hardy Declaration, the Court finds Exemption 7(E) properly invoked on the second and third pages of the Report. Defendants adequately explain how release of the information could cause circumvention of the

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

law in the realm of international terrorism investigations because the techniques are commonly used. (*See id.*). Thus, Defendants are entitled to summary judgment on this issue.

      3.    <u>Exemption 5</u>

Exemption 5 allows the Government to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "This means, in effect, privileged documents that originated with the agency." *Touarsi*, 78 F. Supp. 3d at 344 (citation omitted).

One of the recognized privileges is the "deliberative process" privilege, which encompasses documents "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Moye, O'Brien, O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1277 (11th Cir. 2004) (citation omitted); *see also U.S. Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "The purpose of this privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Moye, O'Brien, O'Rourke, Hogan & Pickert*, 376 F.3d at 1277 (citing *Klamath Water Users*, 532 U.S. at 8–9).

"To fall within the deliberative process privilege, a document must be both 'predecisional' and 'deliberative.'" *Id.* (citation omitted). A document is predecisional if it was "prepared in order to assist an agency decision-maker in arriving at his decision and may include recommendations, draft documents . . . and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Id.* (alteration added; citations omitted). "A document is 'deliberative' if the disclosure of the materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

agency and, thereby, undermine the agency's ability to perform its functions."  *Id.* at 1278 (citations omitted).

The Government explains the last paragraph of the April 30, 2014 Report is redacted because it contains FBI policies properly withheld under the deliberative process privilege.  (*See* Hardy Decl. ¶ 53 & n.14).  Plaintiffs request the Court review the redacted portions of the Report and scrutinize whether the exemption applies because the FBI's explanation is speculative.  (*See* Resp. 11–12).  After reviewing the redacted text, the Court agrees with Defendants the information is exempt from disclosure under Exemption 5 because it involves information concerning the FBI's deliberative process.

**C.     October 24, 2014 Report**

The next document at issue is an October 24, 2014 Report titled, "9/11 Additional Evidence."  (Hardy Decl. Exs., Ex. K, 41–42).  In this two-page document, the FBI invokes Exemptions 1, 3, 6, 7(C) and 7(E).  (*See id.*).  The Court first addresses the applicability of Exemptions 6, 7(C), and 7(E), since these are similarly invoked in the April 30, 2014 Report (*see* Hardy Decl. Exs., Ex. K, 37–40), and then considers the propriety of Exemptions 1 and 3.

1.     Exemptions 6 and 7(C)

As discussed (*see supra* III.B.1.), Exemptions 6 and 7(C) allow the Government to withhold information that "would" or "could reasonably be expected" to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(6); *id.* (7)(C).  At the top of the October 24, 2014 Report, the FBI uses Exemptions 6 and 7(C) to justify redacting the names of two of the briefers.  (*See* Exparte Doc. 5; *see also* Hardy Decl. Exs., Ex. K, 41).  The third name on the list is unredacted.  (*See* Exparte Doc. 5).  This apparent inconsistency between the

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

unredacted and redacted material, with the FBI releasing one briefer's name but not the other two, is unexplained in the Hardy Declaration or the Motion.  (*See generally* Hardy Decl.; Mot.).

The Government asserts the briefers' names are properly redacted because releasing them would invade the agents' personal privacy and could "trigger hostility" toward them by the investigated individuals.  (Hardy Decl. ¶ 59).  With regard to the public interest factor, the Government asserts "there is no public interest . . . served by disclosing the identities of the" agents because "their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities."  (*Id.* (alteration added)).

Plaintiffs disagree, arguing: (1) "[t]he fact that one is briefing the Meese Commission is not a recognizable privacy interest" (Resp. 8 (alteration added)); (2) there is significant public interest . . . [in] understanding" who briefed the Meese Commission (*id.* 9 (alterations added)); and (3) the Meese Commission report does not redact the names of the FBI agents "or 33 other current and former federal government employees . . . .  Such selective redaction of the names of only certain agents . . . should be explained by the FBI." (*id.* 12–13 (alterations added)).

Plaintiffs' points are well-taken.  The Government has not met its burden of establishing Exemptions 6 and 7(C) apply to redact the October 24, 2014 briefers' names.  The FBI's posture these two agents' personal privacy warrants protection, while the third agent's does not, is unsupported.  (*See generally* Mot.; Hardy Decl.).  Even if the agents' names deserved protection, the FBI does not address the public's interest.

In contrast, Plaintiffs demonstrate there is significant public interest in knowing who investigated the September 11 attacks and briefed the Meese Commission.  (*See generally* Mot; Resp.; Reply).  The FBI only conclusorily asserts the public has no interest (*see* Hardy Decl. ¶ 59), "[b]ut there is considerably more than nothing on the public interest side of the scale."

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

*Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1093 (D.C. Cir. 2014) ("*Citizens for Responsibility & Ethics in Wash. II*") (alteration added). "Disclosure of the records [and agents' names] would likely reveal much about the diligence of the FBI's investigation" of the Al-Hijji Family. *Id.* (alteration added). The Court is unpersuaded by the Government's explanation regarding the applicability of Exemptions 6 and 7(C) to the briefers' names; accordingly, summary judgment is denied as to these redactions.

The FBI also utilizes Exemptions 6 and 7(C) to redact the names of "a third party who was of investigative interest to the FBI." (Hardy Decl. ¶ 58). The FBI justifies the redaction, explaining: "[b]eing identified as a subject of a criminal investigation carries a strong negative connotation and stigma," releasing the name "could subject" the individual to "harassment or embarrassment," and "disclosing personal information about this individual would not significantly increase the public's understanding of the FBI's performance of its mission." (*Id.* (alteration added)).

Interestingly, the sentence immediately following the redacted material states: "None of this identifies new participants in the 9/11 attacks but hardens the existing known connections to the plot." (Hardy Decl. Exs., Ex. K, 42). Thus, it is unclear why the FBI believes the name should receive protection on the basis being identified with the investigation could cause embarrassment or harassment to the individual investigated. The FBI does not provide any explanation as to why this specific name should remain undisclosed, particularly in light of the public's interest in learning about individuals possibly involved in the September 11 attacks.

Further, the Government does not explain why this individual's privacy interest should be protected if in fact he or she was connected to the September 11 attacks. Nor does the Government properly address how the individual's privacy interest is outweighed by the public's

interest in learning about the participants of the attacks and how the FBI conducted its investigation.  As to this redaction — the last paragraph redacted on page one and the first two redacted paragraphs on page two of the October 24, 2014 Report — summary judgment is denied.

2.  Exemption 7(E)

As discussed, Exemption 7(E) allows the Government to withhold information that "would disclose techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E) (alteration added).  The Government invokes Exemption 7(E) three times in the October 24, 2014 Report, explaining it is protecting the FBI's "investigative techniques and procedures," and revealing the redactions "would enable the targets of these techniques to avoid detection or develop countermeasures . . . ."  (Hardy Decl. ¶ 76 (alteration added); *see also id.* ¶ 78 (noting the FBI is also protecting the methods it uses to collect and analyze information); *id.* ¶ 79 (stating the FBI redacted information regarding the types of evidence it gathers in national security investigations).

After reviewing the redactions, the Court agrees the Government properly invokes Exemption 7(E) in the Report.  The Government sufficiently explains what procedures would be disclosed if the redacted material is made public.  *See Citizens for Responsibility & Ethics in Wash. II*, 746 F.3d at 1102 ("Exemption 7(E) sets a 'low bar for the agency to justify withholding,' *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011), [but] the agency must at least provide *some* explanation of what procedures are involved and how they would be disclosed." (alteration added; emphasis in original)).

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

Defendants simultaneously invoke Exemption 7(E) with Exemptions 6 and 7(C) in two of the Report's redactions.  The Court has already found the Government did not meet its burden with respect to the redactions under Exemptions 6 and 7(C).  Thus, summary judgment is appropriate only with respect to the redacted portions that qualify under Exemption 7(E), *i.e.*, text that would disclose investigative techniques and strategies.

    3.   <u>Exemptions 1 and 3</u>

The last exemptions the Government uses in the October 24, 2014 Report are Exemptions 1 and 3.  (*See* Hardy Decl. Exs., Ex. K, 41–42).  Exemption 1 protects classified information from disclosure; it exempts documents "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and . . . [documents that] are in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1) (alterations added).  Exemption 3 protects from disclosure documents that are "specifically exempted from disclosure by statute," *id.* § 552(b)(3); it "allows for legislative override of [the] FOIA's presumption of disclosure," *Castagna v. Sec'y of Health & Human Servs.*, No. 99-411V, 2011 WL 4348135, at *16 (Fed. Cl. Aug. 25, 2011) (alteration added).

Because of the possible strong implications for national security, courts should defer to an agency's decision to withhold information under Exemptions 1 and 3.  *See Halperin v. Cent. Intelligence Agency*, 629 F.2d 144, 147–48 (D.C. Cir. 1980); *see also Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (stating courts are required to "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record" (internal quotation marks and citation omitted)).  While the burden of proof is on the Government, "a reviewing court 'must recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic]

might occur as a result of public disclosures of a particular classified record.'" *Krikorian v. U.S. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993) (alteration in original) (quoting *Military Audit Project*, 656 F.2d at 738). "Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Id.* (quoting *Halperin*, 629 F.2d at 148).

The Government argues it properly invokes Exemption 1 because the redactions contain classified information as established by Executive Order 13526, signed by President Barack Obama on December 29, 2009. (*See* Mot. 8; Hardy Decl. ¶¶ 33–34). The classified information is marked "Top Secret" or "Secret" because "the unauthorized disclosure of this information reasonably could be expected to cause exceptionally grave or serious damage to national security." (Hardy Decl. ¶ 36 (citing Exec. Order 13526 § 1.2(a)(2))). According to the Government, the information covers "intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations" (*id.* ¶ 39), and the procedures outlined in Executive Order 13526 "were followed in order to ensure that the information was properly classified" (*id.* ¶ 36).

The Government further explains it properly invokes Exemption 3 "pursuant to Section 102(A)(i)(2) of the National Security Act of 1947 ("NSA"), as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(l)." (Hardy Decl. ¶ 46). It asserts the redacted information contains "intelligence sources and methods" (Mot. 11), the disclosure of which could present "the potential for individuals to develop and implement countermeasures" (Hardy Decl. ¶ 48).

Plaintiffs recognize they may "not have any basis to challenge" the FBI's invocation of Exemptions 1 and 3. (Resp. 13). Nonetheless, they argue because the FBI has been inconsistent

regarding the Al-Hijji Family's connection to the September 11 attacks, these inconsistencies create a "serious factual dispute about whether redacted information has been properly classified or is required to be withheld by the National Security Act." (*Id.*). The Court does not see any factual disputes concerning the classified redactions.

After conducting a detailed review of the redactions, in conjunction with the Hardy Declaration, the Court finds the Government has provided ample evidence the redacted material is exempt from disclosure under Exemptions 1 and 3 because of national security concerns. Accordingly, summary judgment is granted with respect to Exemptions 1 and 3 in the October 24, 2014 Report.

### D.    Youssef Interview Briefing

The third redacted document is a two-page briefing by Bassem Youssef, a retired FBI agent. (*See* Hardy Decl. Exs., Ex. K, 43–44; *see also* Exparte Doc. 7–8). The document concerns "a source who was in direct contact with Usama Bin Laden." (Reply 14). The Government invokes Exemptions 6, 7(C), 7(D), and 7(E) (*see id.*), arguing release of the information would: (1) constitute an unwarranted invasion of privacy (*see* 5 U.S.C. § 552(b)(6), 7(C)); (2) would disclose techniques and procedures of law enforcement investigations that could reasonably be expected to risk circumvention of the law (*see id.* § 552(b)(7)(E)); and (3) could disclose the identity of a confidential source (*see id.* § 552(b)(7)(D)); (*see also* Reply 14–15).

Plaintiffs suggest because the document states the "source was killed by an RPG in Chechnya in 1995," information about this confidential source should be revealed. (Resp. 16 (international quotations omitted) (citing Hardy Decl. Exs., Ex. K, 44)). The fact the confidential source died is irrelevant under Exemption 7(D). *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 34 n. 14 (D.C. Cir. 1998). "The inquiry under Exemption 7(D) is whether a source was given

an express or implied assurance of confidentiality and . . . nothing in [the case law] . . . suggests that a promise of confidentiality expires upon a person's death." *Blanton v. U.S. Dep't of Justice*, 63 F. Supp. 2d 35, 49 (D.D.C. 1999) (alterations added; citation omitted).

Plaintiffs further argue the Hardy Declaration "makes no specific mention of this memo" and does not provide an explanation for the redactions. (Resp. 21). Hardy does explain the exemptions and their applicability, even if he does not specifically address this document. (*See* Hardy Decl. ¶¶ 55–60, 64–68, 74–76). The explanations in the Declaration, when reviewed in conjunction with the unredacted document and *Vaughn* index, show the information provided by the confidential source is properly redacted under Exemption 7(D). Exemptions 6 and 7(C) are also invoked simultaneously in the second redaction of the Youssef Interview Briefing. (*See* Hardy Decl. Exs., Ex. K, 43). The Court finds the entire paragraph is exempt under Exemption 7(D) because the exemption protects both the identity of a confidential source and the "information furnished by a confidential source," 5 U.S.C. § 552(b)(7)(D); thus, the Court does not address Exemptions 6 and 7(C).

The Government also properly invokes Exemption 7(E) in the Youssef Interview Briefing because the redacted information involves "techniques and procedures" used by the FBI, the release of which could "reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Specifically, the information involves techniques used by the FBI in international terrorism investigations. (*See* Hardy Decl. ¶ 76).

The Hardy Declaration and *Vaughn* index explain the applicability of the claimed exemptions to the Youssef Interview Briefing redactions. Because the redactions contain information of a confidential source and techniques used by the FBI to counter terrorism, the Government has met its burden of showing the exemptions apply.

**E.     October 5, 2012 Memorandum**

The last document at issue is an October 5, 2012 Memorandum titled "Updates and Initiatives." (Hardy Decl. Exs., Ex. K, 45–48). In this four-page-document, the Government invokes Exemptions 1, 3, 5, 6, 7(A), 7(C), 7(D), and 7(E). (*See id.*). The Government already invokes these exemptions throughout the other three documents, with the exception of Exemption 7(A), which allows the Government to withhold documents that "could reasonably be expected to interfere with enforcement proceedings," 5 U.S.C. § 552(b)(7)(A).

Plaintiffs insist the October 5, 2012 Memorandum "may be the most important" document at issue in Count II. (Resp. 16). They argue the Court should reject the exemptions for "the same reasons" the other redactions in the rest of the documents should be rejected; and with respect to Exemption 7(A), Plaintiffs request the Court require the Government to provide a more detailed explanation of why the exemption applies. (*Id.* 17–18). The Court first analyzes Exemptions 1 and 3, followed by 7(D) and 7(E), and then the remaining exemptions.

1.     Exemptions 1 and 3

Exemption 1 protects from disclosure information marked as classified in accordance with an executive order, *see* U.S.C. § 552(b)(1); here, the FBI classifies the information under Executive Order 13526 (*see* Mot. 8; Hardy Decl. ¶ 33). Exemption 3 protects information that falls within a statute; the FBI invokes the National Security Act (*see* Hardy Decl. ¶ 46), which protects "intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 3024(i)(1).

The Government explains Exemptions 1 and 3 apply because the redacted information pertains to national security intelligence activities and sources. (*See* Hardy Decl. ¶¶ 33–37, 46–48). The Court agrees the FBI's intelligence-gathering methods "are valuable . . . so long as

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

those who would use countermeasures against them remain unsuspecting. . . . Once an intelligence method is disclosed, its continued use is compromised and the [FBI] must attempt to develop and validate new intelligence methods at significant monetary and informational costs." *Larson v. U.S. Dep't of State*, 565 F.3d 857, 863 (D.C. Cir. 2009) (alterations added).

The Court accords substantial weight to the Government's affidavit with respect to Exemptions 1 and 3 because "the Executive departments responsible for national defense and foreign policy matters have unique insights into" the adverse effects that may result from release of a classified record. *Krikorian*, 984 F.2d at 464 (quoting *Military Audit Project*, 656 F.2d at 738). "The judiciary 'is in an extremely poor position to second-guess' the predictive judgments made by the government's intelligence agencies regarding questions . . . [of] national security posed by disclosing particular intelligence sources." *Larson*, 565 F.3d at 865 (alterations added; citations omitted).

Following the "weight of authority counseling deference in national security matters," *Ctr. for Nat. Sec. Studies v. U.S. Dept. of Justice*, 331 F.3d 918, 927 (D.C. Cir. 2003), the Court finds Exemptions 1 and 3 are properly invoked throughout the October 5, 2012 Memorandum. The Government sufficiently explains why the information relates to intelligence sources and methods, how the information is properly classified in the interest of national security, and why it must remain classified. *See Larson*, 565 F.3d at 865 ("If an agency's statements supporting exemption contain reasonable specificity of detail as to demonstrate that the withheld information logically falls within the claimed exemption and evidence in the record does not suggest otherwise . . . the court should not conduct a more detailed inquiry to test the agency's judgment and expertise or to evaluate whether the court agrees with the agency's opinions."

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

(alteration added)).  Accordingly, summary judgment is appropriate with respect to the use of Exemptions 1 and 3 throughout the October 5, 2012 Memorandum.

      2.     <u>Exemptions 7(D) and 7(E)</u>

Exemption 7(D) protects from disclosure information relating to a confidential source, and 7(E) protects techniques and procedures for law enforcement investigations.  *See* 5 U.S.C. §§ 552(b)(7)(D)–(E).  The Government uses Exemption 7(D) once on the first page of the October 5, 2012 Memorandum and multiple times in the second and third pages.  (*See* Hardy Decl. Exs., Ex. K, 45–47).  The FBI explains these redactions pertain to information provided to them by a foreign agency under implied assurances of confidentiality, and some under express assurances of confidentiality.  (*See* Hardy Decl. ¶¶ 71–73).  After examining the unredacted information along with the *Vaughn* index and Hardy Declaration, the Court is satisfied the Government adequately explains why Exemption 7(D) applies.  The foreign countries cooperated with the United States to apprehend international terrorists under implied, and in some instances express, assurances of confidentiality.

With regard to Exemption 7(E), noted throughout the first three pages of the October 5, 2012 Memorandum, the Government explains it is withholding: (1) "the locations and identities of FBI units . . . squads or divisions . . . involved in the investigations at issue" (*id.* ¶ 81 (alterations added)); (2) information about the "specific investigative focus" of the investigation (*id.* ¶ 82); (3) "investigative techniques and procedures used by the FBI to conduct international terrorism investigations" (*id.* ¶ 76); (4) "sensitive case file numbers" (*id.* ¶ 80); and (5) information regarding "types and dates of investigations" (*id.* ¶ 77).  The *Vaughn* index details the nature of the information withheld under Exemption 7(E) for each redaction.  (*See* Hardy Decl. Exs., Ex. K, 45–48).  After examining the unredacted information, the Court finds the

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

Government has shown with reasonable specificity why the exemption applies; disclosure may reveal FBI "techniques and procedures" that "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

### 3. Exemption 5

Exemption 5 appears at the bottom of page one and top of page two of the October 5, 2012 Memorandum. (*See* Hardy Decl. Exs., Ex. K, 45–46). Exemption 5 allows the Government to withhold privileged agency documents, *see* 5 U.S.C. § 552(b)(5) — one of the privileges is the "deliberative process" privilege, which includes documents regarding the Government's decision process and deliberations concerning policies, *see Moye, O'Brien, O'Rourke, Hogan & Pickert*, 376 F.3d at 1277. The Government argues the exemption applies to these two redactions in the Memorandum because the information pertains to "preliminary recommendations on FBI policies that have not been implemented" and releasing it "would have an inhibiting effect upon agency policy development." (Hardy Decl. ¶ 53). The FBI properly invokes Exemption 5 because the information relates, in part, to an agency's decision process.

### 4. Exemption 7(A)

Exemption 7(A) authorizes an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A) (alteration added). "The principal purpose of Exemption 7(A) is to prevent disclosures which might prematurely reveal the government's cases in court, its evidence and strategies, or the nature, scope, direction, and focus of its investigations, and thereby enable suspects to establish defenses or fraudulent alibis or to destroy or alter evidence." *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 762 (D.C. Cir. 2000) (citations omitted). "Another recognized goal of Exemption 7(A) is to

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

prevent litigants from identifying and intimidating or harassing witnesses." *Id.* (citation omitted). "[T]o withhold documents pursuant to Exemption 7(A), an agency must show that they were compiled for law enforcement purposes and that their disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or *reasonably anticipated.*" *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993) (emphasis in original; alteration added).

The Government utilizes Exemption 7(A) once in the October 5, 2012 Memorandum, at the bottom of the second page. (*See* Hardy Decl. Exs., Ex. K, 46). The FBI invokes the exemption to "protect specific case information from a pending FBI investigation" the release of which could "jeopardize the investigation." (Hardy Decl. ¶ 63). The FBI further states the "information is intertwined with other ongoing investigations of known and suspected third party terrorists." (*Id.*). Plaintiffs request the Court direct the Government to identify the specific enforcement action at issue. (*See* Resp. 17). The Court declines to do so because the Government's explanation, along with the Court's review of the redacted material, suffices to show Defendants properly invoke Exemption 7(A). Moreover, the Court already determined this redacted information is protected under Exemptions 1 and 3. (*See supra* III.E.1.).

     5.     Exemptions 6 and 7(C)

Exemptions 6 and 7(C) are the last two exemptions asserted in the October 5, 2012 Memorandum. As discussed (*see supra* III. B.1.), these protect personal information the release of which "would," 5 U.S.C. § 552(b)(6), or "could reasonably be expected to," *id.* § 552(b)(7)(C), constitute an unwarranted invasion of personal privacy. "The privacy inquiries under Exemptions 6 and 7(C) are 'essentially the same.'" *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 96 n.1 (D.D.C. 2009) (citation omitted)).

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

The Government asserts both exemptions throughout the Memorandum but — as in the other instances where the Government invokes Exemptions 6 and 7(C) (*see supra* III.B.1. and C.1.) — the Court is unable to determine how and why they apply.  There are multiple unredacted names throughout the memorandum and the Government does not explain why the redacted individuals' names warrant protection because of privacy interests, but the individuals whose names are unredacted do not.  (*See generally* Hardy Decl.).  To meet its burden, the Government must first explain why the individuals whose names are redacted have a privacy interests, and if such an interest exists, whether the "privacy interest is outweighed by the public interest in disclosure."  *Citizens for Responsibility & Ethics in Wash. I*, 840 F. Supp. 2d at 231 (citation omitted).

The Government's blanket assertion these individuals have a privacy interest — without details explaining how releasing the names would constitute a "clearly unwarranted" invasion of privacy, *Rose*, 425 U.S. at 382 — is insufficient.  *See News-Press*, 489 F.3d at 1198 (stating "an agency's burden under Exemption 6 of showing that disclosure would constitute a clearly unwarranted invasion of personal privacy is an onerous one" (internal quotation marks and citation omitted)).  Without a more thorough description of how Exemptions 6 and 7(C) apply to the selectively redacted names, and in light of the FOIA's presumption in favor of public disclosure, *see Abramson*, 456 U.S. at 630, the Court is unable to determine whether the exemptions are properly invoked.

## IV.  CONCLUSION

In accordance with the foregoing, it is

CASE NO. 16-61289-CIV-ALTONAGA/O'Sullivan

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment on Counts II and III of Plaintiffs' Complaint **[ECF No. 27]** is **GRANTED in part** and **DENIED in part**.

**DONE AND ORDERED** in Miami, Florida, this 27th day of February, 2017.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record